**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Keith J. Kerns, *et al.*, | : | |
| | : | CASE NO:  5:18-cv-00389 |
| Plaintiffs, | : | |
| | : | Judge Patricia A. Gaughan |
| v. | : | |
| | : | Magistrate Judge William H. Baughman |
| Chesapeake Exploration, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**MOTION TO DISMISS OF DEFENDANT RICHARD J. SIMMERS, CHIEF, OHIO
DEPARTMENT OF NATURAL RESOURCES, DIVISION OF OIL AND GAS
RESOURCES MANAGEMENT**

---

Defendant Richard J. Simmers, Chief, Ohio Department of Natural Resources, Division of Oil and Gas Resources Management ("Chief") requests that this Court dismiss Plaintiffs' claims against him pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  This Court lacks subject matter jurisdiction over the Plaintiffs' claims against the Chief because the claims are barred by the Eleventh Amendment.  Additionally, even if this Court has subject matter jurisdiction over the Plaintiffs' claims, Plaintiffs failed to state a claim upon which relief can be granted that would entitle them to (1) a declaratory judgment, or (2) the issuance of an injunction against the statutorily authorized actions of the Chief.

A Memorandum in Support of this Motion is attached.

Respectfully submitted,

MICHAEL DeWINE (0009181)
Ohio Attorney General

BRIAN J. BECKER (0089738) *Trial Attorney
MOLLY COREY (0079287)
Assistant Attorneys General
Environmental Enforcement Section
2045 Morse Road, A-3
Columbus, Ohio 43229-6693
Phone: 614-265-7071
Fax: 614-268-8871
brian.becker@ohioattorneygeneral.gov
molly.corey@ohioattorneygeneral.gov
*Counsel for Ohio Department of Natural Resources*

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

On March 20, 2018, Plaintiffs filed a Complaint (Doc. No. 1) challenging the enforcement of Ohio Rev. Code § 1509.28 in its entirety. Specifically, Plaintiffs allege Ohio's statutory unitization violates due process under the United States Constitutions and seeks declaratory and injunctive relief against the Chief's administration of Ohio Rev. Code § 1509.28. The Chief does not respond to Plaintiffs' claims raised only as to Defendant Chesapeake Exploration, L.L.C.

The Chief submits this Memorandum in Support of their Motion to Dismiss in accordance with Local R., N.D. Ohio 7.1. For the following reasons, the Chief should be dismissed from this case as a matter of law.

### II. REGULATORY SCHEME

#### 1. Oil and Gas Rights in Ohio under Ohio Rev. Code Chapter 1509

The Ohio Constitution empowers the General Assembly to enact legislation "to provide for the regulation of methods of mining for . . . oil, gas and all other minerals." Ohio Const. Art. II, §36. The General Assembly adopted Ohio Rev. Code Chapter 1509 as the comprehensive statutory scheme for the development of Ohio's oil and gas resources. The statute created the Division of Oil and Gas Resources Management ("Division"), within the Ohio Department of Natural Resources, to regulate oil and gas activities. The Division has sole and exclusive authority to regulate the permitting, location, and spacing of oil and gas wells and production operations within the state. Ohio Rev. Code § 1509.02.

#### 2. Correlative Rights under Ohio Law

1

Ohio law defines "correlative rights" as "the reasonable opportunity to every person entitled thereto to recover and receive the oil and gas in and under the person's tract or tracts . . . without having to drill unnecessary wells or incur other unnecessary expense." Ohio Rev. Code § 1509.01(I).    The Ohio Supreme Court has long recognized the importance of correlative rights. "[T]he principles underlying R.C. Chapter 1509 are safety, . . . protection of correlative rights, . . . and the prevention of physical and economic waste." *Redman v. Ohio Dep't of Indus. Relations,* 75 Ohio St. 3d 399, 409 (1996) (citing in part R.C. 1509.27 and 28).   Ohio Rev. Code Chapter 1509 provides both procedures for combining separate property interests into a common whole and procedures to ensure that all persons receive just compensation if their oil and gas interests are combined. *See* Ohio Rev. Code § 1509.27 (pooling); Ohio Rev. Code § 1509.28 (unitization); and Ohio Rev. Code §§ 1509.27(F) and 1509.28(A)(3) (compensation).

### 3.  Ohio's Unitization Statute

When owners of adjoining land cannot voluntarily agree to consolidate their mineral interests in a way that will ensure the most efficient development of the underlying natural resource and will reduce the amount of oil or gas that is stranded or wasted, Ohio law provides for "unitization." Ohio Rev. Code § 1509.28.  Unitization is a statutory tool intended to ensure fairness to mineral interest owners and protect correlative rights.  The owner(s) of at least 65% of the mineral interests in the proposed drilling unit may apply to the Division and request an order authorizing unit operations that can include both leased and unleased mineral owners.   *Id.* Unleased owners (landowners who have not transferred their mineral interests to others) may be included only if the order contains provisions that protect their rights.   Ohio Rev. Code § 1509.28(A)(9).  The statute authorizes the Chief to issue an order in one of two ways, either (1) upon the Chief's own motion or (2) upon application of the owner(s) of at least 65% of the

2

mineral interest in the land overlying the unit, for unit operation of an entire pool or part of a pool. Ohio Rev. Code § 1509.28(A).

A Chief's Order issued under Ohio Rev. Code § 1509.28 *does not alter mineral rights ownership*, regardless of whether inclusion of the property in the unit is made by operation of the Chief's Order. According to the plain language of the statute, "except to the extent that the parties affected so agree, no order providing for unit operations shall be construed to *result in a transfer of all or any part of the title* of any person to the oil and gas rights in any tract in the unit area." Ohio Rev. Code § 1509.28 (emphasis added). The order *does not authorize the drilling or production of oil and gas wells*. The applicant is required to submit a separate application to the Division requesting a permit to drill and produce from a well, and cannot conduct these activities until a permit is issued. Ohio Rev. Code § 1509.06. A separate permit is required for each and every well drilled within a unit. Ohio Rev. Code § 1509.05.

## III.    PROCEDURAL HISTORY

On July 13, 2015, the Chief issued an order to Chesapeake authorizing unit operations pursuant to Ohio Rev. Code § 1509.28. (Complaint at ¶39). On February 23, 2015, before the Chief had approved Chesapeake's application for unit operations, Plaintiffs filed Case No. 15-00346 in this Court asserting a "takings" claim against the Division for the "taking" of the natural gas rights located beneath the surface of their lands. *Kerns, et al. v. Chesapeake Exploration, LLC, et al.,* N.D.Ohio No. 15-00346, 2015 WL 5137582 (Sept. 1, 2015). On September 1, 2015, this Court dismissed Plaintiffs' case for failing to state a federal claim ripe for review.

Following the issuance of the Chief's Order for unit operations, Plaintiffs also appealed the Order to the Ohio Oil & Gas Commission ("Commission") under Ohio Rev. Code § 1509.36,

3

alleging that the Chief's approval of Chesapeake's application for unitization established unit operations without proper consideration of Plaintiffs' individual property rights. (Complaint at ¶41). On July 7, 2016, the Commission dismissed Plaintiffs' appeal for lack of jurisdiction, finding that "administrative agencies and tribunals may not decide constitutional questions." (Complaint at ¶42). Plaintiffs did not appeal the Commission's dismissal to the Franklin County Court of Common Pleas as allotted by Ohio Rev. Code § 1509.37. *See State ex rel. Kerns et al. v. Simmers, Chief,* 2018-Ohio-256 (2018).

On July 8, 2016 – one day after the Commission's dismissal – Plaintiffs filed a Complaint for a Writ of Mandamus in the Ohio Supreme Court against the Ohio Department of Natural Resources, its Division of Oil and Gas Resources Management, and Division Chief Richard Simmers. (Complaint at ¶44). Plaintiffs sought a writ of mandamus to compel the Division to commence appropriation proceedings pursuant to Ohio Rev. Code Chapter 163. *Id.* The Ohio Supreme Court denied Plaintiffs' Complaint for a Writ of Mandamus because Plaintiffs had an adequate remedy at law through appeal to the Franklin County Court of Common Pleas. *Kerns supra* at 2.

With no prior success in this Court, the Oil and Gas Commission, or the Supreme Court of Ohio, Plaintiffs now return to this Court with a direct attack on the actions of the Division Chief. Plaintiffs filed their Complaint on February 20, 2018 alleging that Ohio's statutory unitization violates due process under the United States Constitutions, that the Chief lacks power and jurisdiction to adjudicate the rights to Plaintiffs' land and minerals, and seeking injunctive relief against the Chief's administration of Ohio Rev. Code § 1509.28 and the Chief's issuance of a drilling permit. (Complaint at p. 14-16). Plaintiffs also seek to enjoin the Chief from issuing additional permits authorizing the drilling of wells on or into Plaintiffs' land. *Id.* at 16.

4

## IV.    STANDARD OF REVIEW

The plaintiff bears the burden of establishing the court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) generally falls into one of two categories: facial attack or factual attack. *Ohio National Life Insurance Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A *facial* attack questions the sufficiency of the pleading. *Id.* In reviewing a facial attack, a trial court takes the allegations in the complaint as true. In reviewing a *factual* attack, no presumptive truthfulness applies. *Id.* When the facts regarding subject matter jurisdiction create a factual controversy, the court must weigh the conflicting evidence to determine whether subject matter jurisdiction exists. *Id.* In reviewing factual attacks, a court may allow affidavits, documents, and a limited evidentiary hearing to resolve the disputed facts. *Id.*

Additionally, a court may dismiss the action if the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although the court must liberally construe a complaint, it is still necessary that the complaint contain more than bare assertions or legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)(citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). All factual allegations in the complaint must be presumed to be true, and the Plaintiff must make reasonable inferences in favor of the non-moving party. 2 MOORE'S FEDERAL PRACTIVE, § 2.34[1][B](Matthew Bender 3d ed. 2003). The Court need not accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantice Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct.

5

1955, 1974 (2007). A court may go outside the pleadings when ruling on a motion to dismiss when the issue is whether a statute bears a rational relationship to a legitimate state purpose. *Spivey v. State of Ohio*, 999 F.Supp. 987, 991 (N.D. Ohio 1998)("[G]oing outside the complaint to hypothesize reasons for enacting a statute will not conflict with the requirement that the pleaded facts be accepted as true. Truth is not the issue in such case and using discovery procedures to develop facts showing the state's true reasons for its actions could be inefficient and unnecessary."). Although the Court's decisions "rests primarily upon allegations in the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint [ ] also may be taken into account.' " *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir.2008)(quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)).

## V.    LAW AND ARGUMENT

### A. THIS COURT LACKS SUBJECT MATTER JURISDICTION

#### 1.   Plaintiffs' Claims Against the Chief Are Barred by the Eleventh Amendment to the United States Constitution.

Plaintiffs' Complaint alleges violations of law and of the United States Constitution against Richard Simmers, Chief of the Division, in his official capacity. The Supreme Court of the United States has consistently held that the Eleventh Amendment to the United States Constitution bars suits against a state official sued in his or her official capacity. Moreover, officials acting in their official capacities are not "persons" within the meaning of 42 U.S.C. §1983.

The proper vehicle to assert Eleventh Amendment immunity is through a motion to dismiss under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. *See Johnson v.*

*Wolgemuth,* 257 F.Supp.2d 1013, 1016–17 (S.D.Ohio 2003).  The Eleventh Amendment to the United States Constitution "bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." *Grinter v. Knight*, 532 F.3d 567, 572 (2008) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); additional citations omitted).  Ohio has not waived its sovereign immunity or consented to being sued in federal court.  *See Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir.1999).  Furthermore, 42 U.S.C. §1983 has not abrogated that immunity. *See Campbell v. Hamilton Cnty.*, 23 F. App'x 318, 327 (6th Cir.2001).

As stated by the court in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L. Ed. 2d 67 (1984) "…if a lawsuit against state officials under 42 U.S.C. §1983 alleges a constitutional claim, the federal court is banned from awarding damaged against the State Treasury even though the claim arises under the Constitution." *Halderman 465 U.S. at 120.*  The Eleventh Amendment bars the court from granting any judgment for a constitutional claim brought directly against the State within the context of 42 USC §1983. *Alabama v Pugh*, 438 U.S. 781 (1978).  The *Pennhurst* Court went on to hold that the ban applies to pendant state law claims as well. *Id.*

This Court, citing *Pennhurst*, reached the same conclusion in *Kolb v. Department of MRDD*, 721 F. Supp. 885 (N. D. Ohio 1989).  *Kolb* involved an employment discrimination suit brought by an employee of a state facility run by the Ohio Department of Mental Retardation and Developmental Disabilities.  The charges were brought pursuant to 42 U.S.C. §1981 and §1983.  The Court held that the Eleventh Amendment bars an action brought against the State, a state agency, or state officials sued in their official capacities, unless the State has consented to be sued.  When an action is for the recovery of money from the state, the State is "entitled to invoke

7

its sovereign immunity from suit." *Ford Motor Co. v. Dep't of Treasury*, 415 U.S. 651, 663, 39 L.Ed.2d 662, 94 S.Ct. 1347 (1974).

There are only two ways in which a State can lose Eleventh Amendment immunity: 1) the State unequivocally waives this immunity in federal court; or 2) Congress abrogates the immunity through § 5 of the Fourteenth Amendment. Although Ohio, in Ohio Rev. Code § 2743.02, has provided a limited waiver of its state sovereign immunity against certain state court actions in the court of claims, it has not waived its sovereign immunity in federal court. *Mixon v. Ohio*, 193 F.3d 389, (6th Cir. 1999).

Here, Plaintiffs seek injunctive and declaratory relief against the Chief pursuant to 28 U.S.C. § 2201, the Fourteenth Amendment, and 42 U.S.C. § 1983. From the face of the Complaint, it is clear that Plaintiffs' allegations against the Chief originate from the Chief's actions taken in his official capacity; this includes acceptance and review of the application for unitization, issuance of the Chief's Order to Chesapeake Exploration for unit operations, and issuance of a permit to Chesapeake authorizing drilling and production operations in the unit. As the Chief took each of these actions in his official capacity, the Eleventh Amendment protects him from the current lawsuit. Because neither the Chief nor the State have waived sovereign immunity or consented to be sued, this Court must dismiss.

## 2. The State and its Instrumentalities are not "Persons" within the Meaning of 42 U.S.C. § 1983.

Courts have consistently held that states, and state officials acting in their official capacity, are not "persons" as that term is defined by 42 U.S.C. §1983. In *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed. 2d 45 (1989), the Court addressed the

question of whether the state, or a state official acting in her official capacity, is a "person" within the meaning of 42 U.S.C §1983.  The Court reasoned that:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, *Welch* v. *Texas Dept. of  Highways and Public Transportation*, 483 U.S. 468, 472-473 (1987) (plurality opinion), or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity. That Congress, in passing § 1983 had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect was made clear in our decision in *Quern*. Given that a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims, and that Congress did not provide such a federal forum for civil rights claims against States, we cannot accept petitioner's argument that Congress intended nevertheless to create a cause of action against States to be brought in state courts, which are precisely the courts Congress sought to allow civil rights claimants to avoid through §1983.

*Will* 491 U.S. at 66.

42 U.S.C. §1983 provides in pertinent part, that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, … subjects,…any citizen...to the deprivation of any right,  privileges, or immunities secured by the Constitution and laws, shall be liable…" Applying well-settled rules of statutory construction, the *Will* Court reasoned that to abrogate Eleventh Amendment immunity and impose liability of the state it would be necessary to read the words "the state" into the statute.  In rejecting this approach the Court stated:  "that would be a decidedly awkward way of expressing an intent to subject the States to liability. At the very least, reading the statute in this way is not so clearly indicated that it provides reason to depart from the often-expressed understanding that 'in common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it.'" *Wilson* v. *Omaha Tribe*, 442 U.S. 653, 667 (1979) (quoting *United States* v. *Cooper Corp.*,

9

312 U.S. 600, 604 (1941)). *See also United States* v. *Mine Workers*, 330 U.S. 258, 275 (1947). *Will* 491 U.S. at 64.  Case law is clear that the meaning of person, as expressed in 42 U.S.C. §1983, does not include the states and that the plain language of the statute indicates that Congress did not intend to waive the states' Eleventh Amendment immunity.  *See also Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

The same conclusion has been reached when considering actions against state actors in their official capacity. The Court has explained that claims against state officials in their official capacities are in reality claims against the state itself. *Lewis v. Clarke*, 137 S.Ct. 1285, 137 S.Ct. 1285, 197 L.Ed2d 631 (2017).  The real party in interest is the state not the individual state actor. Congress has not abrogated the states immunity therefore, an action against a state official, acting in this official capacity, is barred by the state's sovereign immunity as expressed in the Eleventh Amendment.

### 3. Plaintiff's Claims for Relief Are Outside of the Scope of the *Ex Parte Young* Exception.

In Count Two, Plaintiffs raise the doctrine of *Ex Parte Young* as support for their claims against the Chief.  However, Plaintiffs' reliance on this very narrow exception to Eleventh Amendment immunity is wholly misplaced.  In *Ex Parte Young*, the Supreme Court of the United States held that the Eleventh Amendment will not bar an action against a state officer to restrain unconstitutional conduct taken under the color of state law. *Ex Parte Young*, 209 U.S. 123 (1908).  The Supreme Court has been careful in using the *Ex Parte Young* exception, and noted that there are times where "a court should hesitate before casting aside those limitations

10

and permitting an action against a state officer based upon *Ex Parte Young*." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 1132 (1996).

Plaintiffs' Complaint fails to meet the requirements of *Ex Parte Young*. The alleged "federal violations" set forth in Count Two – based on alleged property rights violations – are unsupported by the facts, and based on Plaintiffs' misunderstanding of both Ohio's oil and gas laws and basic principles of property rights.  First, and most importantly, the Chief does not "remove" the oil and gas from beneath the property; while the Chief is authorized by statute to issue unitization orders and drilling permits, the statutes are clear that these regulatory approvals have no effect on private property rights. *See* Ohio Rev. Code § 1509.28(B)(2).  Additionally, the United States Supreme Court has already upheld the States' authority to prevent waste of oil and gas and protect correlative rights of landowners.  *Ohio Oil Co. v. Indiana*, 177 U.S. 190 (1900). By failing to set forth factually supported allegations, Plaintiffs cannot sustain a claim under *Ex Parte Young*.

## B. PLAINTIFFS' COMPLAINT DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs allege that by carrying out Ohio Rev. Code § 1509.28 and processing Defendant Chesapeake's unitization application, the Chief is depriving Plaintiffs of the exclusive possession, control, use and benefit of their property.  (Complaint at ¶16).  Plaintiffs further insist that these violations constitute an unconstitutional taking and a violation of due process. (Complaint at ¶29 and ¶39).  However, the unitization statute does not act as a taking, but even assuming for the sake of argument that it did, all of these claims are merely a collateral attack on the Ohio Supreme Court's decision that Plaintiffs' had an adequate remedy at law by way of appeal in State court.  *State ex rel. Kerns et al. v. Simmers, Chief, et al.*, 2018-Ohio-256 (2018).

11

Plaintiffs inexplicably did not pursue their State court remedy and now attempt to collaterally attack the Ohio Supreme Court's determination here.

### 1. The Standard Two-Prong Test for Ripeness of a Takings Claim

This Court has uniformly recognized a standard two-part ripeness test —which Plaintiffs cannot meet—required for a takings claim. Federal courts may hear a takings claim only after: "(1) the plaintiff has received a 'final decision' from the relevant government actor; and (2) the plaintiff has sought 'compensation through the procedures the State has provided for doing so.'" *Wilkins v. Daniels*, 744 F.3d 409, 417 (6th Cir. 2014) (allegation that microchipping requirements for exotic animals under newly enacted legislation constitute a physical taking without just compensation) (quoting *Williamson County Regional Planning Com'n v. Hamilton Bank,* 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)). "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson* at 194. As long as "a 'reasonable, certain and adequate provision for obtaining compensation' exist[s] at the time of the taking . . . then the property owner 'has no claim against the Government' for a taking." *Id*. citing *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 124-125, 95 S.Ct. 335, 349, 42 L.Ed.2d 320 (1974) and *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016, 104 S.Ct. 2862, 2879-2880, 81 L.Ed.2d 815 (1984). "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson* at 195.

"Ohio currently has a 'reasonable, certain, and adequate procedure' available to takings claimants in state courts: . . . Ohio law provides a statutory mechanism by which the government actor seeking to take property is under a duty to bring an appropriation proceeding against the

12

landowner." *McNamara v. City of Rittman*, 473 F.3d 633, 638 (6th Cir. 2007). "Over the last ten years Ohio courts, including the Ohio Supreme Court, have consistently recognized mandamus as the vehicle with which to contest an involuntary taking, no matter whether that taking is a regulatory or a physical one, and no matter whether the public actor is a state or local entity." *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006). However, a writ of mandamus requesting appropriations proceedings will not be issued when there is a plain and adequate remedy in the ordinary course of law. *State ex rel. TravelCenters of Am., Inc. v. Westfield Twp. Zoning Comm.*, 87 Ohio St.3d 161, 718 N.E.2d 430 (1999).

In *Kerns supra*, the Ohio Supreme Court denied Plaintiffs' request for a writ of mandamus because the Court concluded that Plaintiffs' had an adequate remedy at law. *Kerns* at 2. The Plaintiffs appealed the unitization order to the Commission alleging that the order directs a taking of Plaintiffs' property without just compensation in violation of the Ohio and United States Constitutions. *Id.* at 3. The Commission dismissed the appeal, concluding that it did not have jurisdiction to determine the constitutionality of the order or Ohio Rev. Code § 1509.28. The next day, Plaintiffs filed their Complaint for a writ of mandamus in the Ohio Supreme Court against the Ohio Department of Natural Resources, its Division of Oil and Gas Resources Management, and its Chief, Richard Simmers. Plaintiffs sought a writ of mandamus to compel the Division to commence appropriation proceedings pursuant to Ohio Rev. Code Chapter 163. *Id.* However, the Court denied Plaintiffs' writ of mandamus because the Court concluded that Plaintiffs' had an adequate remedy at law. The Court stated,

> "*** had landowners appealed to the common pleas court, the question of the statute's constitutionality would have been put before the court. Contrary to the landowners' assertion, the review would not have been limited to whether the order was 'just and reasonable.' This is the standard for the chief's initial decision to order unitization. *See* R.C. 1509.28(A). Instead, the court would have

13

reviewed the order to determine whether it was 'lawful and reasonable.' R.C. 1509.37. And if the order did not meet constitutional requirements, the court could have invalidated the order as "unlawful." We conclude that the remedy provided by an appeal under R.C. 1509.37 was complete."

*Id.* at 6.

While mandamus is the vehicle for compelling appropriation proceedings by public authorities where an involuntary taking of private property is alleged, Plaintiffs' had an adequate remedy at law by way of an appeal to State court. Therefore, Plaintiffs were not entitled to the extraordinary relief of a writ of mandamus. With the Supreme Court already ruling on the takings issues, this Court should find Plaintiffs fail to state a claim upon which relief can be granted because a request for a writ of mandamus was the proper vehicle for their claim. Plaintiffs' Complaint is merely a collateral attack on the Supreme Court's decision that held Plaintiffs had an adequate remedy at law to raise their constitutional challenges in State court.

### 2. Plaintiffs' Due Process Challenge Could have been Raised in an Appeal of the Commission's Decision; an Appeal that Plaintiffs did not Pursue.

Plaintiffs allege that Ohio Rev. Code § 1509.28 violates due process under the U.S. Constitution. This claim is already factored into the taking claim. Courts have firmly established that "where the Constitution specifically provides a remedy, as for the taking of real estate, a . . . due process claim will not lie." *Buckles v. Columbus Mun. Airport Auth.*, 90 F. Appx. 927, 931 (6th Cir. 2004) (citing *Montgomery v. Carter County*, 226 F.3d 758, 769 (6th Cir. 2000)). A due process claim with no violation in addition to a taking is "subsumed by the taking claim." *Id.* Because Plaintiffs had an adequate remedy at law available to them through an appeal of the Commission's decision in the Franklin County Court of Common Pleas, that Plaintiffs inexplicably did not pursue, Plaintiffs' due process claim must fail as a matter of law.

14

### 3.  Ohio's Unitization Statute is a Valid Exercise of Ohio's Police Power

Ohio Rev. Code § 1509.28 properly utilizes the State's general police power.  "It is a well-established principle . . . that property is held subject to the general police power of a state and may be regulated pursuant to the police power." *Vanter v. Village of South Point*, 717 F.Supp. 1236, 1241 (S.D. Ohio 1989) (citing *Porter v. City of Oberlin*, 1 Ohio St.2d 143 (1965)). The Ohio Supreme Court has articulated a very high bar for challenges to police power regulations. Acknowledging that exercising police power in virtually every instance will interfere with the enjoyment of liberty or property, the police power will be valid "if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary." *Benjamin v. Columbus*, 167 Ohio St. 103, syllabus ¶5 (1957). The question of police power bearing such a "real and substantial relationship" and whether it is unreasonable or arbitrary are questions for legislative judgment written into the statute, "and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them." *Id.* at syllabus ¶5.

The U.S. Supreme Court has acknowledged the States' authority to prevent waste of oil and gas and protect the correlative rights of all owners through legislation. *Ohio Oil Co. v. Indiana*, 177 U.S. 190 (1900). In *Ohio Oil Co v. Indiana*, the Court considered the constitutionality of a state law that prohibited the escape of oil and gas into the open air. *Id.* The Court affirmed the constitutionality of the law under the state's authority to prevent waste of oil and gas and to protect the correlative rights of all owners through legislative means. *Id.* at 210. *Accord Hunter Co. v. McHugh*, 320 U.S. 222, 227 (1943) ("[A] state has a constitutional power to regulate production of oil and gas so as to prevent waste and secure equitable apportionment among landholders of migratory gas and oil underlying their land . . . ."). The Ohio Supreme

Court has likewise found that "the state's police powers permit the General Assembly to enact legislation governing pooling arrangements, spacing, unitization and other oil and gas drilling regulations . . . ." *Burtner-Morgan-Stephens Co. v. Wilson*, 63 Ohio St.3d 257, 260 (1992).

Ohio's unitization statutes do not violate the takings provisions of the Fifth and Fourteenth Amendments to the United States Constitution. The U.S. Supreme Court has "upheld numerous kinds of state legislation designed to curb waste of natural resources and to protect the correlative rights of owners through ratable taking." *Cities Serv. Gas Co. v. Peerless Oil & Gas Co.*, 340 U.S. 179, 185-86 (1950). And it has recognized that "the legislative power . . . can be manifested for the purpose of protecting all the collective owners, by securing a just distribution, to arise from the enjoyment by them, of their privilege to reduce to possession, and to reach the like end by preventing waste." *Ohio Oil Co. v. Indiana*, 177 U.S. 190, 210 (1900); see also Hunter Co. v. McHugh, 320 U.S. 222, 227-28 (1943) (dismissed on other grounds). These decisions reflect a longstanding principle of property law that holds that "[w]hen property, in which several persons have a common interest, cannot be fully and beneficially enjoyed in its existing condition, the law often provides a way in which they may compel one another to submit to measures necessary to secure its beneficial enjoyment, making equitable compensation to any whose control of or interest in the property is thereby modified." *Head v. Amoskeag Mfg.*, 113 U.S. 9, 21 (1885).

Consistent with these principles, courts have uniformly held that statutory unitization or pooling procedures do not constitute an impermissible taking. Oklahoma was one of the first States to address the constitutionality of spacing requirements and unitization or pooling procedures. It first rejected a challenge to well-spacing requirements, holding that "the lawful exercise of the state's power to protect the correlative rights of owners in a common source of

16

supply of oil and gas is not a proper subject for the invocation of the provisions of either the state or federal Constitution which prohibit the taking of property without just compensation or without due process of law." *Patterson v. Sanolind Oil & Gas Co.*, 77 P.2d 83, 89 (Okla. 1938). It later upheld the State's unitization procedures in the face of a similar constitutional challenge. *Palmer Oil Corp. v. Phillips Petro. Co.*, 231 P.2d. 997 (Okla. 1951). It concluded in Palmer Oil that "[t]he police power of the State extends to defining the correlative rights of owners in a common source of oil and gas supply, providing for the management, operation and further development of such common source of supply and distributing the proceeds thereof among those entitled thereto." *Id.* at syl. ¶ 2.

Courts in other States have followed suit. Like Oklahoma, they have concluded that a State may constitutionally compel the collective development of a source of oil and gas. *See Gawenis v. Ark. Oil & Gas Comm'n*, 464 S.W.3d 453, 457 (Ark. 2015) (Arkansas's forced integration provisions "do not 'take' anything."); *Bennion v. ANR Prod. Co.*, 819 P.2d 343, 348-49 (Utah 1991); *Texaco, Inc. v. Indus. Comm'n*, 448 N.W.2d 621, 622 n.1 (N.D. 1989) ("[T]he constitutionality of oil and gas conservation legislation, including compulsory pooling, is well established"); *Sylvania Corp. v. Kilborne*, 271 N.E.2d 524, 526-27 (N.Y. 1971); *Hunter v. Justice's Court of Centinela Township,* 223 P.2d 465, 467-69 (Cal. 1950); Superior Oil Co. v. Foote, 59 So.2d 85, 92-93 (Miss. 1948); *Hunter Co. v. McHugh*, 11 So.2d 495 (La. 1942). Federal courts have done the same; they too have found that statutory unitization and pooling statutes pass constitutional muster. *Hale v. CNX Gas Co.*, No. 1:10cv00059, 2011 U.S. Dist. LEXIS 52935, *60-61 (W.D. Va. Jan. 21, 2011); *Waller Brothers v. Exxon Corp.*, 836 F. Supp. 363, 371 (S.D. Miss. 1993); *see also Koziara v. Commissioner*, 86 T.C. 999, 1007 (1986) (Michigan unitization procedure did not "constitute an involuntary conversion of property

17

interests of the affected parties"). The claims now raised by Plaintiffs would isolate this Court from the other jurisdictions that have considered this issue and would create a conflict with other courts.

Although many of these decisions pre-date the development of more advanced extraction techniques such as horizontal drilling and hydraulic fracturing, recent decisions confirm that the same standards apply regardless of the type of well or the method of extraction. *See Continental Resources v. Farrar Oil Co.,* 559 N.W.2d 841, 842 and 846 (N.D. 1997) (holding, in the context of a horizontal well, that "[t]he police powers of the state are properly exercised when the Industrial Commission orders spacing or compels pooling"); see also Gawenis, 464 S.W.3d 453 (upholding unitization as applied to shale gas development). The uniform weight of authority therefore demonstrates that statutory unitization procedures like those at issue here do not violate the Fifth and Fourteenth Amendments to the U.S. Constitution.

### 4. Plaintiffs Advocate an Absurd Result, which the Law clearly does not favor.

Even more problematic, Plaintiffs' claims would lead to an absurd double-edged result — a single landowner could block all other property owners from exercising their rights with one hand and with the other would prevent the legislature from acting to protect the rights of all affected property owners. The U.S. Supreme Court has already rejected an interpretation of the Fifth and Fourteenth Amendments that would lead to such a result (*see Ohio Oil Co.,* 177 U.S. at 210-11) and there is no reason why this Court should adopt one now.

### C.  IF VALID, PLAINTIFFS' CLAIMS BELONG IN STATE COURT

The interests at issue primarily involve controversies of state law, so even if this Court finds that it has subject matter jurisdiction to hear Plaintiffs' claims, the abstention doctrine calls for federal courts to exercise judicial restraint until a state court has the opportunity to review the

18

statute. *Railroad Commission of Tex. v. Pullman Co.*, 312 U.S. 496, 499 (1941). As the United States Supreme Court held in *Pullman*, the last word on a state's statute belongs to that state, and not to a federal district court. *Id.* at 500. Such practice "avoid[s] the waste of a tentative decision as well as the friction of a premature constitutional adjudication" by preventing an unnecessary federal court ruling that could be "supplanted by a controlling decision of a state court." *Id.* Abstention is particularly appropriate where there is a need to defer to complex state administrative procedures. *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Like *Burford*, this case involves complex administrative procedures related to the regulation of oil and gas resources. No court in Ohio has rendered a decision regarding the constitutionality or legality of Ohio Rev. Code § 1509.28. This Court should exercise judicial restraint until a state court has the opportunity to adjudicate Plaintiffs' property right and, importantly, review the constitutionality or legality of Ohio Rev. Code § 1509.28.

### D. PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

If the Court finds it has subject matter jurisdiction over Plaintiffs request for injunctive relief, Plaintiffs are still not entitled to relief. In deciding whether to issue a preliminary injunction, "a court must consider: (1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction. *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir.1994) citing *Keeweenaw Bay Indian Community v. State*, 11 F.3d 1341, 1348 (6th Cir. 1993). These "are factors to be balanced, not prerequisites that must be met." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). However, "[a] preliminary injunction is an extraordinary

remedy that should only be granted if the movant carries its burden of proving that the circumstances clearly demand it. *Donaldson v. U.S.*, 109 Fed.Appx. 37, 41 (6th Cir. 2004), citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

Plaintiffs are not entitled to injunctive relief because they have failed to meet this burden. Their history of losing prior legal battles involving these issues before this Court, the Oil and Gas Commission, or the Supreme Court of Ohio demonstrate they cannot surmount their burden. They have not argued facts sufficient to indicate (1) that they are likely to succeed on the merits, (2) that they will suffer irreparable harm, (3) that denial of the relief will likely cause substantial harm to others, or (4) that the public interest is advanced by issuance of an injunction. The harms Plaintiffs allege are speculative and inadequate to justify such an "extraordinary remedy." *Donaldson* at 41. Plaintiffs' request for relief is not properly before the Court, and Plaintiffs have failed to demonstrate the four factors necessary to issue a preliminary injunction. Therefore, Plaintiffs are not entitled to injunctive relief.

## VI.   CONCLUSION

For all the foregoing reasons, Plaintiffs' Complaint against the Chief should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Respectfully submitted,

MICHAEL DeWINE (0009181)
Ohio Attorney General

BRIAN J. BECKER (0089738) *Trial Attorney
MOLLY COREY (0079287)
Assistant Attorneys General
Environmental Enforcement Section
2045 Morse Road, A-3
Columbus, Ohio 43229-6693
Phone: 614-265-7071
Fax: 614-268-8871
brian.becker@ohioattorneygeneral.gov
molly.corey@ohioattorneygeneral.gov
*Counsel for Ohio Department of Natural Resources*

21

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing MOTION TO DISMISS OF DEFENDNAT RICHARD J. SIMMERS, CHIEF, OHIO DEPARTMENT OF NATURAL RESOURCES, DIVISION OF OIL AND GAS RESOURCE MANAGEMENT was filed electronically on this 4th day of April, 2018.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Respectfully submitted,

MICHAEL DeWINE (0009181)
Ohio Attorney General

BRIAN J. BECKER (0089738)  *Trial Attorney

22