**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **Corey A. Kerns,** *et al.*, | ) | **CASE NO. 5:18 CV 389** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Chesapeake Exploration, LLC,** *et al.*, | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants.** | ) | |


<u>**INTRODUCTION**</u>

This matter is before the Court upon: (1) Defendant Chesapeake Exploration, L.L.C.'s

Motion to Dismiss (Doc. 9) and (2) Motion to Dismiss of Defendant Richard J. Simmers, Chief,

Ohio Department of Natural Resources, Division of Oil and Gas Resources Management (Doc.

8). This case involves property rights related to natural gas located below the surface of

Plaintiffs' land. For the reasons that follow, Defendants' motions are GRANTED.

<u>**FACTS**</u>

Plaintiffs, Corey A. Kerns, Keith J. Kerns, Mark Zantene, Linda Zantene, Robert J.

Zantene Trust, Helen Zantene, and Connie Huhn, bring this action against Defendants,

Chesapeake Exploration, L.L.C. and Richard J. Simmers, Chief of the Ohio Department of Natural Resources, Division of Oil and Gas Resources Management, alleging violations of the Fourteenth Amendment in connection with unconstitutional takings of Plaintiffs' property. Plaintiffs request declaratory judgment, injunctive relief, and compensatory and punitive damages.

Plaintiffs are property owners of 127 acres of land located in Harrison County, Ohio. (Doc. 1 ¶ 7). Plaintiffs allege that they own the land as well as the oil, gas, and natural gas liquids located beneath the surface of the land. *Id.* On November 10, 2014, Defendant Chesapeake Exploration, L.L.C. ("Chesapeake") filed a unitization application with the Division of Oil and Gas Resources Management (the "Division") pursuant to Ohio Rev. Code § 1509.28. *Id.* ¶ 34, 35. The application included the mineral estate beneath Plaintiffs' land. *Id.* Plaintiffs objected to the application and submitted a motion to dismiss the application, which was never ruled upon by Defendant Simmers. *Id.* ¶¶ 37, 38.

In February 2015, while the application was pending, Plaintiffs filed their first lawsuit in this Court, alleging wrongdoing with the potential "takings" of their natural gas rights located beneath the surface of their land, in connection with Chesapeake's application. *See Kerns, et al. v. Chesapeake Exploration, LLC, et al.,* No. 15 CV 346, Doc. 1 (N.D. Ohio, Feb. 23, 2015). On September 1, 2015, the Court dismissed Plaintiffs' complaint because Chesapeake's application was still pending and Plaintiffs had not availed themselves of Ohio's procedures for obtaining just compensation.[1]

---

[1]     Neither Defendant Chesapeake nor Defendant Simmers informed the Court that the application had, in fact, been ruled upon by the time the Court's Order was issued.

On July 13, 2015, Defendant Simmers issued a unitization order (the "Order"), aggregating Plaintiffs' land with adjacent land to form a drilling unit (the "Unit"). *Id.* ¶ 13. The Order also authorized Chesapeake to drill three wells on the Unit, but not on the surface of Plaintiffs' land, in order to release oil, gas, and natural gas liquid trapped within the shale beneath the Unit. *Id.* Plaintiffs did not receive notice of the Order until November 4, 2015, when it was posted on the Division's website. *Id.* ¶ 39.

Plaintiffs appealed the Order to the Ohio Oil and Gas Commission (the "Commission") pursuant to R.C. § 1509.36. *Id.* ¶ 41. Plaintiffs asserted that the Order violated their property rights and that the Order was procedurally and substantively unlawful. *Id.* The Commission dismissed the appeal, stating that it did not have jurisdiction to consider Plaintiffs' constitutional law claims. *Id.* ¶ 32. Plaintiffs did not appeal the Division's decision in the Franklin County Court of Common Pleas as provided in R.C. § 1509.37. Plaintiffs then filed a verified complaint for a writ of mandamus with the Ohio Supreme Court, seeking an order to compel Defendant Simmers to commence appropriation proceedings regarding Plaintiffs' property in accordance with Ohio Rev. Code Chapter 163. *Id.* ¶ 44. The Ohio Supreme Court denied Plaintiffs' complaint for a writ of mandamus on the basis that Plaintiffs had an adequate remedy at law under R.C. § 1509.37. *Id.* ¶ 45.

On December 16, 2016, Defendant Simmers issued a drilling permit to Chesapeake for the first oil and gas well to be drilled in accordance with the Order. *Id.* ¶ 14. Pursuant to that permit, Chesapeake drilled the well, commenced horizontal drilling and hydraulic fracturing ("fracking"), and removed oil, gas, and natural gas liquids from the Unit. *Id.* ¶¶ 16-19. Horizontal drilling and fracking involve injecting water, sand, and chemicals into the shale

3

beneath the Unit, including Plaintiffs' land, causing the shale to fracture and release oil, gas, and natural gas liquids, which then flow to the wells for retrieval.  *Id.* ¶ 13.

The Complaint contains three counts.  Count one, against Chesapeake, alleges a takings claim in violation of the Fifth Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1983, as well as a claim for declaratory judgment under 28 U.S.C. § 2201 and a claim for injunctive relief.  Count two requests declaratory judgment and injunctive relief against Defendant Simmers.  Count three is a claim for punitive damages against Chesapeake.  Defendants move to dismiss the Complaint under Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6).  Plaintiffs oppose the motions.

## STANDARD OF REVIEW

### I.  Rule 12(b)(1)

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton*, 798 F.2d 913, 915 (6th Cir. 1986).  This burden is not onerous.  *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).  The party need only show that the complaint alleges a substantial claim under federal law. *Id*.

A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Facial attacks question the sufficiency of the jurisdictional allegations in the complaint. *Id*.  Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id*.  Factual attacks, however, challenge the actual fact of the court's jurisdiction. *Id*.  In such cases, the truthfulness

4

of the complaint is not presumed. *McGee v. E. Ohio Gas Co.*, 111 F.2d 979, 982 (S.D. Ohio

2000) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990)).  Instead,

the Court may weigh any evidence properly before it. *Morrison v. Circuit City Stores, Inc.*, 70

F.Supp.2d 815, 819 (S.D. Ohio 1999) (citing *Ohio Nat'l*, 922 F.2d 320; *Rogers*, 798 F.2d 913).

## II.  Rule 12(b)(6)

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be

granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and

construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v.*

*Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v.*

*Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).  In construing the complaint

in the light most favorable to the non-moving party, "the court does not accept the bare assertion

of legal conclusions as enough, nor does it accept as true unwarranted factual inferences."

*Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek*

*Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997).  As outlined by the Sixth Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain
> statement of the claim showing that the pleader is entitled to relief."
> "Specific facts are not necessary; the statement need only give the
> defendant fair notice of what the ... claim is and the grounds upon which
> it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell*
> *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However,
> "[f]actual allegations must be enough to raise a right to relief above the
> speculative level" and to "state a claim to relief that is plausible on its
> face." *Twombly*, 550 U.S. at 555, 570.  A plaintiff must "plead[ ] factual
> content that allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556
> U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal*

require that the complaint contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

## ANALYSIS

### I. Chesapeake

#### A. Standing

Chesapeake challenges Plaintiffs' standing to assert a takings claim regarding the subsurface property rights at issue. Under Article III of the U.S. Constitution, standing is a threshold requirement for a court to hear all cases and controversies, and thus implicates the issue of subject matter jurisdiction. *See Horne v. Flores*, 557 U.S. 433 (2009). In order to satisfy Article III's standing requirement, Plaintiffs must establish: (1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the conduct at issue; and (3) a likelihood that the injury would be redressed by a favorable decision of the court. *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002). An "injury in fact" requires that the plaintiff suffered "an invasion of a legally protected interest" that is "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548 (2016). The party invoking federal jurisdiction has the burden to prove a concrete and particularized, actual and imminent, injury in fact. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").

Chesapeake contends that Plaintiffs lack standing because they do not own the mineral rights which are subject to the Order.  In support of its argument, Chesapeake provides a number of leases dating back to 1981 which appear to demonstrate that Plaintiffs leased at least some of their interest in the oil and gas beneath their land to another party.  Chesapeake argues that, based on these leases, Plaintiffs have no property interest in the minerals beneath their land.  Plaintiffs object to the introduction of the leases, dispute Chesapeake's arguments, and argue that the hydraulic fracturing process interferes with appellants' use and ownership of the property beneath their land.

Upon review, the Court agrees with Plaintiffs.  Regardless of whether or not Plaintiffs own the mineral rights at issue in this case, Plaintiffs' allegations extend beyond the oil and gas itself.  Plaintiffs' Complaint explicitly alleges that Chesapeake "injected more than 8 million gallons of water, sand and chemicals into the first well, including beneath Plaintiffs' land, thereby depriving Plaintiffs of the exclusive possession, use and benefit of their land."  (Doc. 1 ¶ 17, 18).  Plaintiffs also allege that the processes of fracking and horizontal drilling damaged the subsurface of their land and deprived them of the fair use of their property.  *Id.* ¶¶ 13, 17-19, 32.  The Ohio Supreme Court has held that property owners do have an interest in the subsurface of their land, although those rights are not unlimited.  *See Chance v. BP Chems., Inc.,* 77 Ohio St. 3d 17, 26 (1996) (examining cause of action for subsurface trespass); *see also Baatz v. Columbia Gas Transmission, LLC*, 295 F. Supp. 3d 776 (N.D. Ohio 2018) (Parker) (applying *Chance* to oil and gas subsurface trespass case).  Defendants have done nothing to challenge Plaintiffs' standing on this basis.  Thus, the Court finds that Plaintiffs have adequately alleged an injury in fact and have standing to pursue their claims.

**B. Ripeness**

Chesapeake argues that Plaintiffs' takings claim is unripe because Plaintiffs failed to seek just compensation from Chesapeake in state court prior to filing their lawsuit in this Court, as required under *Williamson Cnty. Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). Plaintiffs argue that they exhausted their state court remedies through their mandamus action before the Ohio Supreme Court, and that the availability of a state court remedy is irrelevant to their § 1983 claim.

Plaintiffs' takings claim is subject to the *Williamson County* doctrine. *Williamson County* requires that plaintiffs utilize state compensation remedies before filing a takings claim in federal court. *Williamson Cnty.*, 473 U.S. at 194; *McNamara v. City of Rittman,* 473 F.3d 633, 637 (6th Cir. 2007) ("a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation."). In *Coles v. Granville*, 448 F.3d 853, 861, 865 (6th Cir. 2006) the Sixth Circuit held that Ohio has a "reasonable, certain, and adequate provision for obtaining compensation." Specifically, an individual "who believes that his property has been taken in the absence of such an appropriation proceeding may initiate a mandamus action to force the government actor into the correct appropriation proceeding." *Id*.

Plaintiffs appear to acknowledge this requirement, and argue that they filed an action in mandamus against Defendant Simmers and the Ohio Department of Natural Resources seeking just compensation. (Doc. 9-2, PageID # 407). Plaintiffs argue that they did not include Chesapeake in their writ of mandamus because Chesapeake is a "private commercial enterprise"

8

and would, therefore, be an improper party to an action in mandamus. (Doc. 14, PageID # 581).

Chesapeake responds that it could have been a party to the mandamus action, and that Plaintiffs'

failure to comply with *Williamson County* as to Chesapeake renders their takings claim unripe.

Upon review, the Court agrees with Plaintiffs. Through their action in mandamus,

Plaintiffs asked the Ohio Supreme Court to compel the state to commence compensation

proceedings under Chapter 163. As Plaintiffs point out and as set forth in further detail below,

Chesapeake is a private party and would not have been subject to this type of mandamus

proceeding. *See, e.g. State ex rel. Longacre v. Penton Publ'g Co.*, 673 N.E.2d 1297, 1298 (Ohio

1997) ("Mandamus will not lie to enforce a private right against a private person.").

Chesapeake argues that it could have been a party to the mandamus action pursuant to

*State ex rel. Union Twp. v. Union Twp. Prof'l Firefighters, IAFF Loc. 3412,* 2014-Ohio-1582, ¶

25 (Ohio Ct. App. 2014). The Court disagrees. In *Union Twp.*, the court held that the city was

permitted to file an action in mandamus against a firefighters' union because the city sought to

enforce a right that arose by way of the parties' relationship "as public employer and the

exclusive representative of these public employees." *Id.* ¶ 26. This is not the situation here,

where Chesapeake is a private party representing its own interests, and Plaintiffs are private

parties representing their own interests. Upon these facts, the Court finds that Plaintiffs' claims

against Chesapeake are ripe for review.

### C. State Action

Chesapeake moves to dismiss Plaintiffs' claims on the basis that Plaintiffs have failed to

state a claim for violation of the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. §

1983. That statute states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. Thus, to prevail on a claim under § 1983, Plaintiffs must establish (1) the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law. *Wittstock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir. 2003). Defendants will be considered state actors for the purposes of §1983 only if the conduct that allegedly gave rise to the deprivation of the plaintiffs' constitutional rights may be "fairly attributable to the state." *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (citing *Lugar v. Edmonson Oil Co., Inc.,* 457 U.S. 922 (1982)). Plaintiffs argue that Chesapeake engaged in state action when it filed an application under Ohio Rev. Code § 1509.28 to unitize Plaintiffs' land, obtained a permit, and drilled pursuant to that permit. In response, Chesapeake argues that these allegations do not constitute state action taken under color of state law, and must be dismissed.

Upon review, the Court agrees with Chesapeake. Private conduct constitutes state action when there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co,* 419 U.S. 345, 350-51 (1974); *Wolotsky v. Huhn*, 960 F.2d 1331, 1336 (6th Cir. 1992). Whether a "close nexus exists . . . depends on whether the State has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Am. Mfrs. Mut. Ins. Co. v.*

*Sullivan,* 526 U.S. 40, 52 (1999) (citations omitted). A private entity is not a state actor where its conduct is not compelled by the state but is merely permitted by state law. *See Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 164-66 (1978) (no state action where private company threatened to sell plaintiff's property following eviction, as authorized by state law); *Jackson v. Metro. Edison Co.,* 419 U.S. at 358 (no state action where state commission approved private utility company's termination of service). Moreover, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs.,* 526 U.S. at 52 (no state action where private insurer was required to obtain state authorization before withholding payment under workers' compensation statute). Rather, "it must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983." *Wolotsky,* 960 F.2d at 1335 (citing *Bier v. Fleming,* 717 F.2d 308, 311 (6th Cir. 1983)).

Plaintiffs allege that Chesapeake applied for a unitization order and permit under R.C. § 1509.28, drilled one well, plans to drill two additional wells, and removed oil and gas from beneath Plaintiffs' land. (Doc. 1 ¶¶ 13-18). These allegations do not demonstrate a "sufficiently close nexus" between Chesapeake and the state such that Chesapeake's conduct could be fairly attributed to the state. *See Am. Mfrs.*, 526 U.S. at 53 ("Private use of state-sanctioned private remedies or procedures does not rise to the level of state action.") (citing *Tulsa Prof. Collection Servs., Inc. v. Pope*, 48 U.S. 478, 485 (1988)); *Watson v. Kenlick Coal Co.,* 498 F.2d 1183, 1185 (6th Cir. 1974) (no state action where a private company acted pursuant to mining permit); *Cranley v. Nat'l Life Ins. Co. of Vermont*, 318 F.3d 105, 112 (2d Cir. 2003) (no state action where state commissioner held hearing and approved private defendants' reorganization plan);

11

*Mabry v. Fischer,* 2011 U.S. Dist. LEXIS 139215 (S.D.N.Y. Dec. 5, 2011) (no state action where private entity operated under state-issued permits).

The only case cited by Plaintiffs in support of their argument for state action, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970), is inapposite. *Adickes* involved a restaurant which refused to serve lunch to the plaintiff. *Id.* The Supreme Court held that summary judgment in favor of the restaurant was improper where the plaintiff alleged and provided evidence that she had been refused service pursuant to a 'state-enforced custom' of segregating people on the basis of race in local restaurants. *Id.* at 170. In *Adickes*, the Court stated that the plaintiff could establish a § 1983 claim by showing (1) the existence of a state-enforced custom of segregation, and (2) that the state-enforced custom motivated the restaurant's refusal to serve her. *Id.* at 174. This analysis does not apply to the facts here, where Plaintiffs have made no allegations that a state-enforced custom motivated Chesapeake's actions.

The Court also notes that Plaintiffs' argument that Chesapeake is a state actor wholly contradicts Plaintiffs' argument that Plaintiffs could not include Chesapeake, a "private commercial enterprise," in their mandamus action. (Doc. 14, PageID # 581). Plaintiffs neither acknowledge nor explain this inconsistency. However, if Chesapeake were a state actor, then Plaintiffs would have been required to seek compensation against Chesapeake in their state court mandamus action pursuant to *Williamson County*. Plaintiffs chose not to do so, instead concluding that Chesapeake is a private actor. As set forth herein, the Court agrees with that conclusion.

Plaintiffs have not adequately alleged that Chesapeake acted under color of state law, a necessary element for Plaintiffs' § 1983 claim. This claim, as well as the claims for declaratory judgment and punitive damages deriving from the § 1983 claim, are dismissed.[2]

## II. Defendant Richard Simmers

### A. Sovereign Immunity

Defendant Simmers argues that the Eleventh Amendment to the United States Constitution bars lawsuits against state officials in their official capacities. Defendant Simmers is the Chief of the Ohio Department of Natural Resources, Division of Oil and Gas Resources Management. Plaintiffs respond that the *Ex parte Young* exception to sovereign immunity applies here. Upon review, the Court agrees with Plaintiffs that the *Young* exception applies and permits their suit to proceed against Defendant Simmers.

The Eleventh Amendment bars suits brought in federal court against a state official acting in his or her official capacity, unless the state has waived its sovereign immunity or consented to be sued in federal court. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). The Supreme Court has created an exception to this grant of immunity, however, for claims for prospective, equitable relief against individual state officials in their official capacities. *See Ex parte Young*, 209 U.S. 123 (1908); *see also Telespectrum v. Public Serv. Comm'n of Kentucky*, 227 F.3d 414 (6th Cir. 2000) ("Under the doctrine of *Ex parte Young*, suits against state officials seeking equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment."). In order to qualify for the *Young* exception, an action must seek "prospective

---

[2]    Because the Court is dismissing Plaintiffs' claims against Chesapeake for lack of state action, the Court will not reach Chesapeake's arguments as to the applicable statute of limitations, collateral estoppel, and the sufficiency of Plaintiffs' allegations.

relief to end a continuing violation of federal law." *Caren v. Kent State University,* 282 F.3d 391 (6th Cir. 2002).  In determining whether the *Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry" into whether the complaint alleges an ongoing violation of federal law and seeks relief "properly characterized as prospective." *Verizon Maryland, Inc. v. Public Serv. Com'n of Maryland,* 535 U.S. 635, 636 (2002).

Defendant Simmers first argues that the *Young* exception does not apply because, by statute, the Order and permit have no effect on private property rights.  This argument is unavailing.  Whether or not the Order and corresponding permit issued by Defendant Simmers are *actually* inconsistent with federal law is not part of the inquiry into whether suit lies under *Ex parte Young*.  *Verizon Maryland, Inc.,* 535 U.S. at 646 (rejecting Fourth Circuit's "suggestion" that *Young* did not apply because the order at issue was not inconsistent with federal law and stating that "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim.").  As set forth above, the only relevant inquiry under *Young* is whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.  *Verizon Maryland, Inc.,* 535 U.S. at 636.

Defendant Simmers also argues that the *Young* doctrine should not apply to Plaintiffs' claim against him because he is not the party doing the drilling, and the Order and permit giving rise to Plaintiffs' claim have already been issued.  Defendant Simmers argues that because his role in the unitization process is effectively over, the requested relief is retroactive and, therefore, not subject to *Young*.  Plaintiffs respond that the deprivation of their property rights, which is occurring pursuant to the Order and permit, is ongoing and continuous.  Moreover,

Plaintiffs point out that two of the three wells have not yet been drilled, and argue that they are seeking an injunction to prevent the further drilling authorized by the Order and permit.

The Court agrees with Plaintiffs that the remedy they seek against Defendant Simmers is prospective, rather than retroactive. The Sixth Circuit has stated that retroactive relief "compensates the plaintiff for a past violation of his legal rights" and "usually takes the form of money damages." *Doe v. Wigginton,* 21 F.3d 733, 736-37 (6th Cir. 1994); *see e.g. S & M Brands v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008) (relief held to be retroactive where Plaintiffs sought a one-time payment of money that had previously been denied). In contrast, "prospective relief merely compels the state officers' compliance with federal law in the future." *Doe,* 21 F.3d at 737; *see, e.g. Zielasko v. State of Ohio*, 873 F.2d 957 (1989) (prospective relief where plaintiffs sought to enjoin the future enforcement of a state constitutional provision they wished to be declared unconstitutional). Moreover, when determining whether the remedy sought is prospective or retroactive, a court must "look to the substance of the legal claim, not its formal description." *S & M Brands v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008) (citing *Papasan v. Allain,* 478 U.S. 265, 280 (1986)).

Plaintiffs allege in their Complaint that pursuant to the Order and permit, Chesapeake drilled the well that continues to impact Plaintiffs' property and violate their constitutional rights. (Doc. 1 ¶¶ 50- 52). Plaintiffs also allege that pursuant to the Order and permit, Chesapeake will drill additional wells, which will violate Plaintiffs' constitutional rights in the future. *Id.* Plaintiffs have only asserted a claim for injunctive and declaratory relief against Defendant Simmers, and are not seeking monetary relief from him. Plaintiffs have requested, among other things, that this Court declare: (1) that Defendant Simmers' Order and permit

violate Plaintiffs' constitutional rights; (2) that Ohio Rev. Code § 1509.28 violates Plaintiffs' constitutional rights; and (3) that the Order and permit are null and void as to Plaintiffs. (*Id.* PageID # 14-16). Plaintiffs have also requested an injunction enjoining Defendant Simmers from: (1) continuing to enforce the Order and permit; (2) issuing any additional permits authorizing the drilling of wells on or beneath Plaintiffs' land; and (3) taking any action that will "continue to deprive Plaintiffs of their [constitutional] property rights." *Id.* at 16.

Although the Court recognizes that the Order and permit have already been issued, Plaintiffs allege that actions continue to be taken pursuant to the Order and permit which violate their constitutional rights. Courts frequently apply the *Young* doctrine to cases where the state official's actions took place in the past. *See Verizon*, 122 S. Ct. at 1760 (plaintiff sought injunction restraining state officials from enforcing an order which plaintiff claimed violated federal law); *Lawson v. Shelby County, TN,* 211 F.3d 331 (6th Cir. 2000) (plaintiffs sought equitable and injunctive relief against election officials who allegedly deprived them of their voting rights a year earlier).

Defendant Simmers argues that this case is analogous to *S & M Brands v. Cooper*, 527 F.3d 500 (6th Cir. 2008), in which the Sixth Circuit held that the *Young* doctrine did not apply to a claim for the release of escrow funds associated with cigarette sales in a particular year. The Court disagrees. In *S & M Brands,* tobacco manufacturers sued the Tennessee attorney general after the attorney general decided that the manufacturers were not entitled to certain funds that had been collected pursuant to a state statute. *Id.* at 505-06. The manufacturers claimed that the enforcement of the statute constituted an ongoing violation of their rights, because they were being deprived of money to which they were entitled. *Id.* The *S & M Brands* court held that the

relief sought was retroactive because "the substance of [plaintiffs] claim is completely focused on the past – a *past* decision of the Attorney General on *past* sales of cigarettes which had an impermissible retroactive *(past)* effect." *Id.* at 511 (emphasis in original). Here, while Defendant Simmers' Order and permit were issued in the past, those documents provide ongoing legal authority for Chesapeake to drill wells and remove oil and gas from below Plaintiffs' land in the future. Plaintiffs allege that this constitutes an ongoing taking of their property in violation of their constitutional rights. Unlike *S & M Brands*, in which the plaintiffs sought a "one-time payment of money," the Plaintiffs here seek an injunction preventing the ongoing enforcement of the Order and permit. *See id.* at 510.

Defendant's argument that the cases cited by Plaintiffs are distinguishable because these cases involved federal, rather than state laws, is not persuasive either. The *Young* doctrine applies to claims against state officials who are alleged to be violating federal law by enforcing unconstitutional laws, whether state or federal. *See, e.g. Ex parte Young*, 209 U.S. 123 (1908) (allowing plaintiffs to sue state officers who are "clothed in some duty in regard to the enforcement of the laws of the state . . . [and are] violating the Federal constitution."); *see also Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015) (plaintiffs could proceed with suit against state officials under *Young* doctrine based upon alleged illegality of state statute). Plaintiffs' allegation that Defendant Simmers violated their constitutional rights falls squarely within the *Young* doctrine.

Defendant Simmers also argues that a state official sued in his official capacity is not a person amenable to suit for the purposes of § 1983. Defendant Simmers cites *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) in support of his argument. The Supreme Court in *Will*

17

expressly stated, however, that "[o]f course, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the state." *Will*, 491 U.S. at 71, n. 10; *S & M Brands, Inc. v. Cooper,* 527 F.3d 500, 507-08 (6th Cir. 2008) (citing *Will* and stating that "a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law."). Thus, *Will* acknowledges that *Ex parte Young* provides an exception to the general rule that state officials are not subject to suit under § 1983. Because the Court finds that the *Young* doctrine applies here, Plaintiffs' claims will not be dismissed on the basis of sovereign immunity.

## B. *Williamson County* Ripeness

Defendant Simmers argues that Plaintiffs' claim is not ripe because they did not seek compensation through the available state procedures as required under *Williamson County*, 473 U.S. 172 (1985). Specifically, Defendant Simmers argues that Plaintiffs failed to avail themselves of the procedure set forth in R.C. § 1509.28, through which they could have appealed the Commission's dismissal of their appeal following the issuance of the Unitization Order. In response, Plaintiffs argue that they met the *Williamson County* requirements by initially appealing the issuance of the Order to the Commission and then by filing an action in mandamus prior to bringing suit in federal court.

Upon careful review, the Court agrees with Plaintiffs. As set forth above, *Williamson County* requires Plaintiffs to demonstrate that they utilized the state's compensation remedies before filing a takings claim in federal court. *Williamson Cnty.*, 473 U.S. at 172. As Defendant Simmers points out, in ruling on Plaintiffs' complaint in mandamus, the Ohio Supreme Court

held that R.C. § 1509.36 constituted a complete remedy for Plaintiffs to seek compensation for the alleged taking of their property, and that Plaintiffs failed to utilize that remedy. *State ex rel. Kerns v. Simmers*, 2018 WL 663144 (Ohio Jan. 16, 2018). The Court recognizes that Plaintiffs did not exhaust all the available mechanisms for appealing the issuance of the Unitization Order. The Sixth Circuit has held, however, that the *Williamson County* requirement "refers only to an action for just compensation . . . *not* to review procedures." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 518-19 (6th Cir. 2004); *See also Williamson County* at 194, n. 13 ("Again, it is necessary to contrast the procedures provided for review of the Commission's actions, such as those for obtaining a declaratory judgment . . . with procedures that allow a property owner to obtain compensation for a taking. Exhaustion of review procedures is not required."). The procedures available under R.C. § 1509.37 were review procedures that Plaintiffs were not required to exhaust.

Importantly, there is no state court remedy left for Plaintiffs to pursue here. Plaintiffs had only thirty days to appeal the Commission's decision to the Franklin County Court of Common Pleas, a deadline which has long passed. *See* R.C. § 1509.37. As set forth above, the Sixth Circuit has held that Ohio has an adequate provision for obtaining compensation—an action in mandamus. *Coles*, 448 F.3d at 861, 865. Here, following the issuance of the Order, Plaintiffs sought compensation through their mandamus action before the Ohio Supreme Court. That action was dismissed. Plaintiffs have no further remedy available in state court. Moreover, R.C. § 1509.36 specifically states that the procedure provided is strictly voluntary and is not required to be utilized in order for a party to preserve his rights thereunder:

> Sections 1509.01 to 1509.37 of the Revised Code . . . do not constitute
> the exclusive procedure that any person who believes the person's rights

> to be unlawfully affected by those sections or any official action taken thereunder must pursue in order to protect and preserve those rights, nor do those sections constitute a procedure that that person must pursue before that person may lawfully appeal to the courts to protect and preserve those rights.

R.C. § 1509.36. Plaintiffs' claims are, therefore, ripe for review here. *See DLX, Inc.,* 381 F.3d at 520 (*Williamson County* standard met where plaintiffs' claims had been dismissed by state courts on procedural grounds, and the time for state court review of administrative decision had expired).[3]

### C. Constitutionality of Ohio Revised Code § 1509.28

In the Complaint, Plaintiffs allege that R.C. § 1509.28 is unconstitutional as applied to them because it authorizes an impermissible taking of their property in violation of the Fifth and Fourteenth Amendments. Defendant Simmers argues that he merely carried out his role under Ohio's statutory unitization procedure, which was enacted to protect correlative rights pursuant to Ohio's police powers and does not authorize impermissible takings.

Upon review, the Court agrees with Defendant Simmers. The Takings Clause of the Fifth Amendment states that private property shall not be taken for public use without just compensation. It applies to the states through the Fourteenth Amendment. *See San Diego Gas & Elec. Co. v. San Diego*, 450 U.S. 621, 623, n. 1 (1981). In the context of oil and gas mineral

---

[3] Defendant Simmers generically argues that Plaintiffs' complaint is merely a collateral attack on the Ohio Supreme Court's decision to dismiss Plaintiffs' mandamus action. Defendant Simmers fails to identify precisely how Plaintiffs' complaint constitutes such a collateral attack. Defendant only argues that the Ohio Supreme Court concluded that Plaintiffs had an adequate remedy at law, and dismissed Plaintiffs' mandamus action as a result. The Court is not convinced that Plaintiffs' complaint here constitutes a "collateral attack" on this decision.

rights, however, the Supreme Court has consistently held that it is "undeniable that a state may adopt reasonable regulations to prevent economic and physical waste of natural gas," even if those regulations have the effect of impacting the property rights of individual landowners. *See Cities Serv. Gas Co. v. Peerless Oil & Gas Co.,* 340 U.S. 179, 185 (1950) ("This Court has upheld numerous kinds of state legislation designed to curb waste of natural resources and to protect the correlative rights of owners through ratable taking . . . or to protect the economy of the state."); *Hunter Co v. McHugh*, 320 U.S. 222, 227-28 (1943) ("We have held that a state has constitutional power to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among landowners of the migratory gas and oil underlying their land, fairly distributing among them the costs of production and of the apportionment."); *Ohio Oil Co. v. State of Indiana,* 177 U.S. 190, 210 (1900) ("Hence it is that the legislative power . . . can be manifested for the purpose of protecting all the collective owners, by securing a just distribution, to arise from the enjoyment, by them, of their privilege to reduce to possession, and to reach the like end by preventing waste.").

The Supreme Court has held that legislation regulating the retrieval and use of oil and gas is permissible in part because states may utilize their police powers to protect correlative rights and reduce waste. *See Ohio Oil Co.,* 177 U.S. at 212 ("We cannot say that the statute amounts to a taking of private property, when it is but a regulation by the State of Indiana of a subject which especially comes within its lawful authority."); *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 77 (1911) (statute regulating carbonic acid gas retrieval did not "take from any surface owner the right to tap the underlying rock and to draw from the common supply, but, consistently with the continued existence of that right, so regulates its exercise as reasonably to conserve the

interests of all who possess it."); *Walls v. Midland Carbon Co.,* 254 U.S. 300 (1920) (legislation regulating use of natural gas was a valid exercise of police power).[4] This rationale is particularly pertinent to Ohio's statutory unitization, which was enacted pursuant to the state's police powers. *See Redman v. Ohio Dep't of Indus. Relations*, 75 Ohio St. 3d 399, 409 (1996) ("Pursuant to [the Ohio Constitution], and pursuant to the police power of the state to control and conserve the natural resources of Ohio . . . the General Assembly has enacted a number of statutes regulating the production of coal, oil and gas, including R.C. Chapter 1509."). Plaintiffs do not dispute this.    Plaintiffs instead argue that these cases, which are rooted in considerations of the "correlative rights" of adjacent landowners in the context of the oil and gas underlying their properties, should not apply here. Plaintiffs argue that horizontal drilling and fracking

---

[4]    Consistent with these holdings, several state supreme courts and federal courts have held that unitization procedures do not constitute impermissible takings of property. *See, e.g. Koziara v. C.I.R.,* 86 T.C. 999 (1986) ("The Michigan unitization procedure represents a regulation of the extraction process in order to avoid [inequity among adjacent landowners], not the exercise of the power of eminent domain, nor does it constitute an involuntary conversion of property interests of the affected parties."); *Bennion v. ANR Production Co.,* 819 P.2d 343, 348 (Utah 1991) (statutory unitization was not an unlawful taking because "orders of oil and gas regulatory agencies are . . . fundamentally designed to prevent waste and protect correlative rights, with effects upon private property when they occur only incidental to these two police power purposes."); *Texaco, Inc. v. Indus. Comm'n.*, 448 N.W.2d 621, 622, n.1 (N.D. 1989) ("[T]he constitutionality of oil and gas conservation legislation, including compulsory pooling, is well established."); *Patterson v. Sanolind Oil & Gas Co.,* 77 P.2d 83, 89 (Okla. 1938) ("the lawful exercise of the state's power to protect the correlative rights of owners in a common source of supply of oil and gas is not a proper subject for the invocation of the provisions of . . . [the] federal Constitution which prohibit the taking of property without just compensation or without due process of law.").

release minerals that would otherwise be non-migratory, and cause unique damage to Plaintiffs' land.  Defendant Simmers acknowledges that many of the relevant cases pre-date the development of horizontal drilling and fracking, but argues that the same analysis applies regardless of the type of drilling at issue.

The Court agrees with Defendant Simmers.  "Correlative rights" are recognized in Ohio, and are defined by the Ohio legislature as "the reasonable opportunity to every person entitled thereto to recover and receive the oil and gas in and under the person's tract or tracts, or the equivalent thereof, without having to drill unnecessary wells or incur other unnecessary expense." Rev. Code § 1509.01.  In the interest of protecting correlative rights, R.C. § 1509.28 authorizes the chief of the division of oil and gas resources management to issue an order pooling the properties of owners if the chief finds that a pool is necessary to "increase substantially the ultimate recovery of oil and gas."  *See* R.C. § 1509.28.  The order must contain several provisions, including provisions as to expense sharing, supervision of the unit operations, and provisions as needed "for the protection or adjustment of correlative rights." *Id.*  Landowners receive royalties for the oil and gas retrieved through the subsequent drilling, which must also be set forth in the order.  *Id.*[5]

Here, Plaintiffs' argument that these correlative rights are not implicated in the context of fracking and horizontal drilling is unavailing.  The state's interests in protecting the rights of

---

[5]     The Court also notes that the statute explicitly provides that any such order shall not be construed "to result in a transfer of all or any part of the title of any person to the oil and gas rights in any tract in the unit area.  All property . . . shall be the property of such owners in the proportion that the expenses of unit operations are charged."  *See* R.C. § 1509.28.

landowners and avoiding waste and negligence exist regardless of the type of drilling at issue. Indeed, if Plaintiffs' arguments were accepted, landowners would be left with no mechanism for retrieving oil in a way that avoids waste and contemplates the rights of their neighbors. Ohio's statutory unitization procedure, which was passed pursuant to the state's police powers, operates to effectuate the correlative rights of the adjoining landowners, including Plaintiffs. Indeed, courts in other jurisdictions have applied the correlative rights doctrine in the context of modern drilling techniques such as those utilized here. *See, e.g. City of Longmont Colo. v. Colo. Oil & Gas Ass'n*, 369 P.3d 573, 580 (Colo. 2016) ("Moreover, such a ban [on fracking] could adversely impact the correlative rights of the owners of oil and gas interests in a common source or pool . . ."); *Gawanis v. Arkansas Oil & Gas Comm'n,* 2015 Ark. 238 (Ark. 2015) (forced pooling order did not constitute unconstitutional taking in the context of shale development).

Further, the cases cited by Plaintiffs in support of their argument are not persuasive. The Supreme Court in *Kelly v. Ohio Oil Co.,* 57 Ohio St. 317 (Ohio 1897), merely recognized that minerals underlying the land's surface, including oil and gas, are part of the realty. *See Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St. 3d 490, 494 (Ohio 2015) (discussing *Kelly*). *Kelly* predates the development of the correlative rights doctrine discussed above. Plaintiffs' reliance on *Chance v. BP Chem.,* 77 Ohio St. 3d 17 (Ohio 1996) is also misplaced. *Chance* did not involve unitization, and the Ohio Supreme Court in *Chance* specifically distinguished the oil and gas cases stating, "[w]e find that the situation before us is not analogous to those present in the oil and gas cases, around which a special body of law has arisen based on special circumstances not present here." *Id.* at 24. Thus, the Court agrees with Defendant

Simmers that the correlative rights doctrine, and the highly developed body of case law based upon that doctrine, are highly relevant to this case.

Plaintiffs also argue that a per se taking of their property occurred because the drilling fractured the shale beneath their land, and water, sand, and chemicals were injected into their land constituting a physical invasion therein. The Court disagrees. Although it is true that a physical taking occurs where the government physically intrudes upon a plaintiff's property, the Constitution does not create private property rights. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1001 (1984); *Calver Invest., Inc. v. Louisville & Jefferson Cty. Metro. Sewer Dist.,* 847 F.2d 304, 307 (6th Cir. 1988). Rather, "such rights are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Calver Invest.,* 847 F.2d at 307 (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

In Ohio, private property is subject to the state's police power. *See State v. Anderson,* 57 Ohio St.3d 168, 169 (Ohio 1991) ("It is well-established that private property is held subject to the general police power of a state and may be regulated pursuant to that power."); *State ex rel. Taylor v. Whitehead*, 70 Ohio St.2d 37, 40 (1982) ("Laws enacted in the proper exercise of the police power . . . even though they result in the impairment of the full use of property by the owner thereof, do not constitute a taking of private property.") (internal citations omitted). Moreover, Ohio law does not afford subsurface property interests the same protections as surface interests. *Baatz v. Columbia Gas Transmission, LLC*, 295 F. Supp. 776, 785 (N.D. Ohio 2018). Rather, under Ohio law, "subsurface ownership rights are limited." *Id.* (holding that "the Ohio Supreme Court has made it clear that subsurface trespasses are not actionable unless the invaded

25

landowner can prove actual damage to the property or actual interference with the actual or foreseeable use of the land.") (citing *Chance,* 670 N.E.2d at 992).

Thus, in Ohio, landowners have limited subsurface property rights and hold their private property subject to the general police power of the state. All of Plaintiffs' allegations relating to the "physical invasion" of their land relate only to the subsurface property at issue. (Doc. 1, ¶¶ 13, 16-19, 30). Plaintiffs do not allege that a well will be erected on their property or that the surface of their property will be impacted in any way by the drilling. Plaintiffs also do not allege any current surface damage. Rather, Plaintiffs allege that Chesapeake will enter *beneath* the land, inject water, sand, and chemicals *beneath* the land, and remove oil, gas, and natural gas liquids from *beneath* the land, pursuant to the unitization procedure set forth under Ohio law. *Id.*

Given these allegations and Plaintiffs' property rights under Ohio law, the Court finds that Plaintiffs have not stated a per se takings claim under the Fifth and Fourteenth Amendments. As set forth above, the statutory unitization procedure set forth in R.C. § 1509.28 operates to protect the correlative rights of landowners, including Plaintiffs, and it was passed as a valid exercise of Ohio's police power. The cases cited by Plaintiffs do not help their argument. These cases stand for the unremarkable proposition that a physical occupation of land, or the physical confiscation of private property, has been held to be a taking. These cases, however, do not address the unique correlative property rights associated with oil and gas ownership, and the Supreme Court's holdings that legislation protecting these rights do not constitute illegal takings.[6]

---

[6] Because the Court has concluded that no "taking" could occur based upon the facts alleged, Plaintiffs do not have a public use claim. The claim is dismissed.

Because the Court finds that Plaintiffs' allegations do not state a claim under the Fifth and Fourteenth Amendments, Plaintiffs' claims for declaratory judgment and injunction against Defendant Simmers are dismissed.[7]

**CONCLUSION**

For the foregoing reasons, Defendant Chesapeake Exploration, L.L.C.'s Motion to Dismiss (Doc. 9) and the Motion to Dismiss of Defendant Richard J. Simmers, Chief, Ohio Department of Natural Resources, Division of Oil and Gas Resources Management (Doc. 8), are GRANTED.

IT IS SO ORDERED.


　　　　　　　　　　/s/ Patricia A. Gaughan
　　　　　　　　　　PATRICIA A. GAUGHAN
　　　　　　　　　　United States District Court
　　　　　　　　　　Chief Judge

Dated: 6/13/18

---

[7]　　It is entirely unclear whether Plaintiffs seek to pursue a claim for procedural due process against Chesapeake, Defendant Simmers, or both. The only facts identified in the Complaint to support this generic claim are: (1) Plaintiffs' motion to dismiss the application was not explicitly ruled upon; and (2) Plaintiffs did not receive notice of the Unitization Order when it was issued. However, Plaintiffs expressly allege that they were permitted to file an appeal of the Order. Thus, they wholly fail to explain how any violation of their procedural due process occurred. In their brief in opposition to Defendants' motions to dismiss, Plaintiffs discuss in length a purported conflict of interest in the Ohio Supreme Court. These allegations appear nowhere in the Complaint and will not be considered. Plaintiffs allegations fail to give rise to a procedural due process claim, and as such, it is dismissed.